Nos. 25-3347, 25-3348, 25-3349, 25-3350, 25-3363

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

CRYSTALLEX INTERNATIONAL CORPORATION,

*Plaintiff-Appellee*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA *et al.*,

*Defendants-Appellants.*

Appeals From The United States District Court
For The District of Delaware
No. 1:17-mc-151-LPS, Judge Leonard P. Stark (sitting by designation)

## RESPONSE OF CRYSTALLEX INTERNATIONAL
## CORPORATION TO MOTION FOR A STAY PENDING APPEAL

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
RICHARDS, LAYTON & FINGER, P.A.
1 Rodney Square 920 N. King St.
Wilmington, DE 19801
(302) 651-7700

Miguel A. Estrada
　*Counsel of Record*
Lucas C. Townsend
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500

Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Plaintiff-Appellee Crystallex International Corp.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit L.A.R. 26.1.1(b), Crystallex International Corporation states that it has no parent companies and that no publicly held company holds a 10% or greater ownership interest in Crystallex's shares.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

BACKGROUND .............................................................................. 6

ARGUMENT .................................................................................. 16

I.  The Traditional Equitable Factors Weigh Strongly Against A Stay Pending Appeal ............................................................... 16

A.  The Venezuela Parties Are Unlikely To Succeed On The Merits ............................................................................ 16

1.  This Court Has Already Rejected The Venezuela Parties' Challenge To The Attachments ...................... 17

2.  The Venezuela Parties Are Unlikely To Establish That The District Court Abused Its Discretion Three Times In Rejecting Disqualification ................. 22

B.  The District Court's Order Delaying The Sale's Closing Addresses The Venezuela Parties' Claimed Harm ............. 24

C.  The Balance Of Equities And Public Interest Support Denying The Motion ........................................................... 25

II.  No Stay Should Be Entered Without A Bond To Protect Crystallex And Other Judgment Creditors .............................. 27

CONCLUSION ............................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bolivarian Republic of Venezuela v. Crystallex Int'l Corp.*,
  140 S. Ct. 2762 (2020) ........................................................... 10

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*,
  84 F.3d 988 (7th Cir. 1996) .................................................. 24

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  244 F. Supp. 3d 100 (D.D.C. 2017) ......................................... 6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  2017 WL 6349729 (D.D.C. June 9, 2017) .............................. 6

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  333 F. Supp. 3d 380 (D. Del. 2018) ............................ 8, 17, 20

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ..................... 1, 6, 7, 9, 10, 17, 18, 20, 26

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  2021 WL 129803, at *8 (D. Del. Jan. 14, 2021) ............... 12, 13

*Del. River Port Auth. v. Fraternal Order of Police*,
  290 F.3d 567 (3d Cir. 2002) .................................................. 22

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
  636 F.2d 755 (D.C. Cir. 1980) .............................................. 27

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
  462 U.S. 61 (1983) ........................................ 8, 18, 19, 20, 21

*Gov't Guar. Fund of Republic of Finland v. Hyatt Corp.*,
  95 F.3d 291 (3d Cir. 1996) .................................................... 27

*Heartland Payment Sys., LLC v. Volrath*,
  762 F. App'x 95 (3d Cir. 2019) .............................................. 24

iii

*Hook v. McDade*,
  89 F.3d 350 (7th Cir. 1996) ................................................................ 24

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
  438 F.3d 298 (3d Cir. 2006) ................................................................ 20

*Jones v. Pittsburgh Nat'l Corp.*,
  899 F.2d 1350 (3d Cir. 1990) .............................................................. 22

*Nken v. Holder*,
  556 U.S. 418 (2009) .............................................................................. 16

*Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*,
  2025 WL 2958813 (S.D.N.Y. Oct. 17, 2025) ...................................... 11

*Raytech Corp. v. White*,
  54 F.3d 187 (3d Cir. 1995) .................................................................. 22

*Rubin v. Islamic Republic of Iran*,
  583 U.S. 202 (2018) .............................................................................. 19

*State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical
  Therapy, Inc.*,
  376 F. App'x 182 (3d Cir. 2010) ........................................................ 26

*Taylor v. Comm'r of Pa. Dep't of Corr.*,
  150 F.4th 188 (3d Cir. 2025) .............................................................. 21

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
  451 U.S. 630 (1981) .............................................................................. 21

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
  2023 WL 7182179 (D. Del. Nov. 1, 2023) .......................................... 21

**Statutes**

8 *Del. C.* § 324(a) ...................................................................................... 7

28 U.S.C. § 455(b)(4) ................................................................................ 24

28 U.S.C. § 1291 ........................................................................................ 9

28 U.S.C. § 1606 ................................................................... 19, 20

**Rules**

Fed. R. App. P. 8(a)(2)(E) ......................................................... 27

Fed. R. Civ. P. 69(a)(1) ......................................................... 7, 20

**Other Authorities**

Office of Foreign Assets Control, *FAQ 1123* ........................................... 26

## INTRODUCTION

Venezuela is a notorious scofflaw that stole the assets of countless international investors and has spent more than a decade defying numerous final judgments, all while spending lavishly on frivolous legal process to shield its assets and evade justice. After long obstructing Crystallex's and other creditors' efforts to enforce over $20 billion in judgments, the Bolivarian Republic of Venezuela, Petróleos de Venezuela, S.A. (PDVSA), PDV Holding, Inc. (PDVH), and CITGO Petroleum Corporation (collectively, the Venezuela Parties) now ask this Court for further delay through a stay pending appeal—based in substantial part on arguments the Court has already rejected.

In 2019, this Court held that PDVSA is Venezuela's alter ego and affirmed Crystallex's writ of attachment on PDVSA's shares in PDVH, at which point the district court had "nothing left to do but execute." 932 F.3d 126, 136 (3d Cir. 2019). This Court emphasized that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Id.* at 149.

Other creditors of the Venezuela Parties registered unpaid judgments worth more than $20 billion in the District of Delaware and obtained attachments junior to Crystallex's.  The district court—assisted by a Special Master and legal and financial advisors—spent years developing and implementing a process to sell the PDVH Shares and satisfy as many judgments as possible.  But the Venezuela Parties consistently sought to obstruct that process.  They attempted to relitigate Crystallex's writ of attachment immediately after this Court affirmed its validity and the Supreme Court denied review, sought innumerable stays, and forced collateral litigation to reissue a share certificate upon purportedly discovering, well after this Court affirmed, that the original was "lost."  And although the district court appointed as Special Master *the candidate the Venezuela Parties themselves recommended*, they launched disqualification motion after disqualification motion against the Special Master and his advisors in an avowed attempt (in their words) "to resist the sale as best we could."  *Crystallex* Dkt. 2526 at 51.[1]

---

[1] "*Crystallex* Dkt." refers to entries in No. 1:17-mc-00151-LPS (D. Del.).

While dragging out litigation for years below, the Venezuela Parties were simultaneously attempting to fend off claims in the Southern District of New York by certain holders of defaulted PDVSA bonds (the 2020 Bondholders), which hold a pledge of 50.1% of the equity in CITGO Holding, a company sitting between PDVH and CITGO. The PDVH Shares' value depends on CITGO's value. If the 2020 Bondholders were to exercise the pledge, the sale would net less money to pay Delaware creditors. The bondholders' claim, which has now been upheld, is approximately $3 billion.

Following multiple bidding rounds, thousands of pages of briefing and evidence, and a five-day hearing, the district court ordered that the PDVH Shares be sold to Amber MSub LLC, an entity affiliated with Elliott Investment Management L.P., for $5.892 billion. That bid also proposes to resolve the competing claims by the 2020 Bondholders at nearly a billion-dollar discount, distributing that value to creditors in Delaware. Amber's ability to secure a substantial discount from a party holding a federal judgment is contingent on satisfying certain deal deadlines. The bid and the discount alike may be imperiled if the Court stays the sale's

closing, let alone impedes the pre-closing process of necessary regulatory approvals.

The Venezuela Parties are not remotely likely to succeed on appeal. Although they invoke a Delaware-law fraud requirement, this Court already held *in this case* that federal common law exclusively provides a disjunctive control-or-fraud standard for determining whether a foreign instrumentality is a foreign state's alter ego. And the district court properly denied the Venezuela Parties' eleventh-hour request to disqualify the Special Master and his advisors as untimely, waived, and meritless.

The Venezuela Parties also have not shown a likely irreparable injury (or, really, any injury) absent a stay. Because they have accumulated tens of billions in final federal judgments vastly exceeding CITGO's most extravagant valuation, the Venezuela Parties have no realistic residual interest in the PDVH Shares. Any supposed "harm" from the inevitable change in CITGO's corporate control also would occur only *after* closing. The district court already entered an order delaying that closing for at least seven days after Amber obtains necessary approvals from the

Office of Foreign Assets Control (OFAC) and other regulatory entities to permit this Court to consider a motion at that time if appropriate.

Neither the balance of equities nor the public interest supports a stay. The district court correctly observed that a stay could jeopardize the entire sale and years of effort—precisely what the Venezuela Parties desire. And the public has an interest in the enforcement of judgments, not in continued flouting of them.

While the equities do not justify a stay, this Court should decide this appeal on an expedited schedule that allows for a decision before the sale's closing, which must occur before September 19, 2026. The Venezuela Parties indicated below they would agree to a schedule that (running from the sale's approval) gives each side 30 days for its principal brief, with 15 days for a reply—*i.e.*, December 29, January 28, February 12. Crystallex concurs and requests oral argument and a decision at the Court's earliest convenience.

If the Court were to grant any stay pending appeal, it should be conditioned on the Venezuela Parties posting a bond securing the economic value provided by the Amber transaction ($8.924 billion). A stay

would risk the termination of the 2020 Bondholders' agreement with Amber, as well as the Amber transaction itself, to the judgment creditors' detriment. At a minimum, a bond is necessary to protect Crystallex and the other victims of Venezuela's depredations from the prejudice a stay would cause them.

## BACKGROUND

1. In 2002, Crystallex contracted with Venezuela for "the right to develop and extract exclusively for 20 years the gold deposits at Las Cristinas," which are "among the world's largest," and "Crystallex spent hundreds of millions of dollars developing the Las Cristinas site." 932 F.3d at 133. In 2011, Venezuela nationalized its gold mines, expropriating Crystallex's contractual interest. *Id.* Crystallex won an arbitral award against Venezuela of $1.2 billion plus interest. *Id.*

In 2017, a district court confirmed Crystallex's arbitration award, entered judgment for Crystallex, and permitted Crystallex to execute on assets in other districts to satisfy the judgment. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 2017 WL 6349729 (D.D.C. June 9, 2017).

2.    When Venezuela refused to pay, Crystallex registered its judgment in the District of Delaware and moved to attach shares held by PDVSA—Venezuela's wholly owned oil company—in its wholly owned Delaware subsidiary (PDVH), asserting that PDVSA is Venezuela's alter ego and its separate corporate form should be disregarded.  932 F.3d at 134.  PDVH wholly owns CITGO Holding, Inc., which in turn wholly owns CITGO Petroleum Corp., the fifth-largest petroleum-refining company in the United States.  Dkt. 10-2 ¶¶ 7-10.  Crystallex's motion for a writ of attachment was governed by Federal Rule of Civil Procedure 69(a), which requires that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located."  Delaware law permits judgment creditors like Crystallex to attach shares in a Delaware corporation and have "[s]o many of the shares . . . sold at public sale to the highest bidder, as shall be sufficient to satisfy the debt."  8 *Del. C.* § 324(a).

PDVSA intervened and moved to dismiss, arguing that it was not Venezuela's alter ego and thus was entitled to sovereign immunity under the Foreign Sovereign Immunities Act.  932 F.3d at 134.  PDVSA separately opposed Crystallex's motion for a writ of attachment, arguing that

Crystallex needed to demonstrate that PDVSA was Venezuela's alter ego in accordance with Delaware law, which allows alter-ego liability only when "the corporate form is abused to perpetrate a fraud against the plaintiff." *Crystallex* Dkt. 26 at 16-17.

The district court denied PDVSA's motion to dismiss and granted Crystallex's motion for a writ of attachment.  Applying *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 61 (1983) (*Bancec*), the court held that "federal law, not state law" governs the alter-ego inquiry, rejecting PDVSA's "state-law alter ego standards," including "Delaware state law," as "unhelpful" and "unpersuasive" because "the pertinent relationship is that between Venezuela and PDVSA"—a foreign state and its wholly owned instrumentality—"neither of which is a Delaware corporation."  333 F. Supp. 3d 380, 396 n.13, 405 (D. Del. 2018).  The district court held that, for both "[s]ubject matter jurisdiction [and] the merits," "PDVSA is the alter ego of Venezuela" and "PDVSA's shares in PDVH" are "property of Venezuela."  *Id.* at 394 n.10, 406, 415.  The court ordered the Clerk to "issue the writ and have it served in furtherance of an execution through a public sale of PDVH stock," which is "subject to

attachment and execution in order to satisfy Venezuela's debt to Crystallex." 932 F.3d at 134; *Crystallex* Dkt. 95 at 1.

3.     PDVSA separately "appealed both of these orders" (1) denying its motion to dismiss based on immunity and (2) directing the Clerk to issue and serve a writ of attachment.  932 F.3d at 134.  This Court affirmed both the "denial of PDVSA's motion to dismiss as an immune sovereign *and* the grant of Crystallex's motion for a writ of attachment under Federal Rule of Civil Procedure 69."  *Id.* at 136 (emphasis added).  The Court exercised jurisdiction to review the sovereign-immunity ruling under the collateral-order doctrine and to review "the grant of Crystallex's motion for a writ of attachment" because it was a "final judgment under 28 U.S.C. § 1291 by leaving the District Court 'nothing left to do but execute[.]'" *Id.*

PDVSA argued that "*Bancec* cannot be used . . . to reach the assets of PDVSA," but the Court held that "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-immune assets to satisfy the judgment against the country," even without "satisfy[ing] an element of fraud."  932 F.3d at 138-39, 145.  Venezuela's control over PDVSA "easily" satisfied

*Bancec*'s "extensive-control requirement" for an alter-ego relationship. *Id.* at 152.

This Court emphasized that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." 932 F.3d at 149. When the Venezuela Parties sought further review of this Court's affirmance of the attachment's validity, this Court and the Supreme Court denied their petitions, leaving those obligations where they stood after the panel decision. Order, No. 18-2797 (3d Cir. Nov. 21, 2019); 140 S. Ct. 2762 (2020).

4.    To fulfill this Court's mandate, the district court developed a process appropriate to a judicial sale of the PDVH Shares, which would transfer ownership of a sanctioned foreign state's multibillion-dollar oil company to pay Crystallex's and others' attached judgments. The Venezuela Parties nominated, and the court appointed, Robert B. Pincus as Special Master to propose and implement a sale process. *Crystallex* Dkts. 258 at 2, 277 at 3. The court authorized the Special Master to retain Weil, Gotshal & Manges LLP as his legal advisor and Evercore as his financial advisor based on their "extensive experience" working on complex sales. *Crystallex* Dkt. 348 ¶¶ 11-14. The court designated

Crystallex, ConocoPhillips, and the Venezuela Parties as "Sale Process Parties" to work with the Special Master on all aspects of the sale and required them to pay the Special Master's and his advisors' fees. *Crystallex* Dkt. 481.

After marketing the shares and soliciting bids under approved sale procedures, the Special Master recommended that the court approve a bid submitted by Amber, an affiliate of Elliott. Dkt. 10-2 at 35-36. The Amber bid was unacceptable to judgment creditors, and the court relaunched the sale process. *Id.* at 36-39. Following two additional bidding rounds, the Special Master recommended that the court approve Gold Reserve's bid, which had a headline price of $7.382 billion. *Id.* at 55-58.

Despite its nominally high price, the Gold Reserve bid faced significant risks to closing because it proposed to fund its price with a loan secured by CITGO assets yet had no plan to address the 2020 Bondholders, which hold a pledge of 50.1% of CITGO Holding's shares and made clear they would seek to block any sale they perceived as impairing that pledge. Dkt. 10-2 at 26, 44-48, 57. The Southern District of New York has since upheld the pledge's validity. *Petróleos de Venezuela, S.A.*

*v. MUFG Union Bank, N.A.*, 2025 WL 2958813 (S.D.N.Y. Oct. 17, 2025),

*appeal docketed,* No. 25-2652 (2d Cir. Oct. 21, 2025).

The Special Master then received another Amber bid offering a pur-

chase price of $5.892 billion and including a $2.125 billion settlement

with the 2020 Bondholders that addressed that obstacle. Dkt. 10-2 at 60-

65. The Special Master recommended accepting Amber's bid, which was

much more likely to close than Gold Reserve's bid. *Id.* at 64-65.

5.    While the district court and Special Master carried out their

work, the Venezuela Parties subjected the proceedings to hindrance and

delay. PDVSA renewed its theory that a valid attachment required a

showing of fraud in a motion to quash despite this Court's affirmance of

the attachment, arguing that Rule 69(a) incorporated Delaware alter-ego

law by directing federal courts to apply the forum state's procedures for

execution. 2021 WL 129803, at *8 (D. Del. Jan. 14, 2021).

The district court held that collateral estoppel barred PDVSA's mo-

tion because the court had previously "rejected whatever challenges

PDVSA made to the validity of [the] writ and ordered the writ to be

served." 2021 WL 129803, at *9. This Court's affirmance "confirm[ed]

that the validity of the writ has been actually, necessarily, and finally

resolved." *Id.* at *10. And PDVSA could not avoid preclusion by repackaging its already-rejected challenge under Rule 69: "'Once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.'" *Id.* at *9. The court observed that "[e]ach day that Crystallex does not recover on its judgment is arguably something of an affront to the United States judicial system. Those days must soon come to an end." *Id.* at *18.

Undeterred, the Venezuela Parties pursued no fewer than nine unsuccessful appeals and mandamus petitions in this Court. Nos. 18-2797, 18-2889, 18-3124, 21-1276, 21-1277, 21-1289, 22-1606, 22-8024, 23-1687. They sought to stay or delay these judgment-enforcement proceedings over 20 times. *E.g.*, *Crystallex* Dkt. 250 at 3-5. And the Venezuela Parties repeatedly sought to disqualify the Special Master and his advisors. First, they unsuccessfully claimed that the Special Master's proposed fee arrangement with Evercore required disqualification. *Crystallex* Dkt. 443. Next, they *twice* moved to disqualify the Special Master for supposedly improper communications with OFAC, even though the district court authorized the Special Master to obtain OFAC guidance because any sale of the PDVH Shares—blocked assets—would require an OFAC license.

*Crystallex* Dkts. 509, 1138.  The district court denied these requests as untimely, waived, and meritless.  *Crystallex* Dkts. 544, 1180.

The Venezuela Parties were not done.  At the beginning of the September 2025 sale hearing, they lodged a *fourth* motion to disqualify on the ground that Weil and Evercore had been retained in unrelated matters by Elliott or its affiliates, various holders of 2020 Bonds, or ad hoc groups containing them, even though they had learned of these client relationships no later than *March 2025*.  *Crystallex* Dkt. 2526 at 1-4.  The court denied the motion as untimely because the Venezuela Parties "have been on notice of the relationships they now attack for quite some time but they did not alert the Court of potential issues for months," *id.* at 6; partly waived because the Venezuela Parties strategically sat on their challenge "until September," *id.* at 15-16; and meritless because no reasonable observer would question the Special Master's impartiality when any judicial sale of a multibillion-dollar corporation necessarily required legal and financial advisors whose "experience must include familiarity

and interaction with, and almost certainly retention by, the types of entities that would have the means and interest to bid on a company like CITGO," *id.* at 50.[2]

6.    After a five-day hearing and consideration of thousands of pages of briefing and evidence, the district court approved the sale of the PDVH Shares to Amber.  Dkt. 10-2 at 1-2.  Before the court could even enter its order, the Venezuela Parties moved for a stay pending appeal. *Id.* at 160.  The court denied that motion because the Venezuela Parties were unlikely to succeed on appeal, and because a stay would "undermin[e] the integrity of the federal judiciary and public's confidence in it, and exacerbat[e] the ongoing harm to adjudicated judgment creditors." *Id.* at 160-61.  The court also observed that "[a]ll the purported harms the Venezuela Parties seek to avoid will only be triggered by the closing of the Sale Transaction," which cannot occur "unless and until OFAC grants a license." *Id.* at 161.

---

[2] Gold Reserve, the losing bidder in the sale process, recently sought mandamus based on this disqualification issue.  This Court denied the petition without calling for a response.  Dkt. 46, *In re Gold Reserve Ltd.*, No. 25-3091.

# ARGUMENT

## I.   The Traditional Equitable Factors Weigh Strongly Against A Stay Pending Appeal

This Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009).  The Venezuela Parties have not shown that any, much less all, of these factors supports a stay.

### A.   The Venezuela Parties Are Unlikely To Succeed On The Merits

The Venezuela Parties assert that: (1) the attachments held by the Republic's creditors are invalid because Rule 69 purportedly requires them to satisfy Delaware's veil-piercing standard to attach PDVSA's property; and (2) the Special Master and his advisors should have been disqualified.  Mot. 8-21.  They fall far short of a "strong showing" of likely success.  *Nken*, 556 U.S. at 434.

### 1. This Court Has Already Rejected The Venezuela Parties' Challenge To The Attachments

The Venezuela Parties argue that Delaware alter-ego law governs the validity of the attachments by the Republic's creditors as if this Court had not already affirmed Crystallex's attachment in the face of that same challenge. *E.g.*, Mot. 4. Their contrary narrative is revisionist history. And the mandate rule and collateral estoppel prevent the Venezuela Parties from re-airing their meritless objection.

a. The Venezuela Parties protest that they want a first "bite at the apple" to argue that Delaware alter-ego law governs the attachments' validity. Mot. 13. They had that bite—more than six years ago.

When moving to attach the PDVH Shares, Crystallex argued that the federal-common-law *Bancec* standard governed jurisdiction *and* authority to attach the shares, and PDVSA responded that Delaware law's fraud requirement should influence the *Bancec* standard. *See supra*, at 7-8. The district court agreed with Crystallex that "federal law, not state law," governs the alter-ego inquiry across the board. 333 F. Supp. 3d at 396 n.13.

PDVSA appealed from *both* rulings on jurisdiction and attachment validity. 932 F.3d at 134. Rejecting PDVSA's attempt "to restrain the

application of *Bancec* in post-judgment proceedings," this Court reasoned that, "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-immune assets to satisfy the judgment against the country." *Id.* at 139.  The Court further held that "*Bancec* establishes a disjunctive test" requiring proof of *either* "extensive[] control" *or* "'fraud.'"  *Id.* at 140.  And when (unsuccessfully) seeking Supreme Court review, the Venezuela Parties themselves recognized that this Court "affirmed the district court's issuance of a writ of attachment against PDVSA's shares of PDVH" under *Bancec*.  Pet. 6-7, 140 S. Ct. 2762 (No. 19-1049).

The Venezuela Parties are unlikely to prevail in urging a *conjunctive* control-and-fraud Delaware-law test for a valid attachment when this Court rejected that argument in upholding the attachment in this very case.

b.    The Venezuela Parties' Delaware-law argument is foreclosed in not only this Court, but every court in the Nation.  In *Bancec*, the Supreme Court held that the relationship between a foreign state and its instrumentalities is governed by principles "common to both international law and federal common law."  462 U.S. at 622 n.11, 623.  That

rule of federal common law—grounded in the Constitution's commitment of foreign affairs to the federal government—controls over any contrary rule of Delaware corporate law.

While acknowledging that *Bancec* governs whether foreign instrumentalities are immune from suit or liable for foreign sovereigns' judgments, the Venezuela Parties argue (Mot. 9-10) that Delaware law controls whether a foreign instrumentality's property is the sovereign's property for execution. But *Bancec* applies with equal force here. *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 211 (2018). There is no reason why federal law would dictate a control-or-fraud test to determine whether a foreign instrumentality's separate identity should be disregarded for purposes of immunity and liability, yet state law would flip execution to a control-and-fraud test.

*Bancec* expressly rejected the Venezuela Parties' argument (Mot. 8-9) that 28 U.S.C. § 1606 requires applying a forum state's veil-piercing law. 462 U.S. at 622 n.11. Section 1606 is "silent" as to "the rule governing the attribution of liability *among* entities of a foreign state"—a question demanding a federal rule of decision because "matters bearing on the

19

Nation's foreign relations 'should not be left to divergent and perhaps parochial state interpretations.'" *Id.*

Nor can the Venezuela Parties undo *Bancec* through Rule 69, which directs courts to borrow "the *procedure* of the state where the court is located" in judgment-enforcement proceedings. Fed. R. Civ. P. 69(a)(1) (emphasis added). State law governs questions such as which writ should be used, the types of attachable property, and the sale process. 333 F. Supp. 3d at 387-88, 425. But property ownership is a question of substance, not procedure, that choice-of-law principles resolve. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 318-20 (3d Cir. 2006).

Even if Rule 69 required courts to apply state-law alter-ego principles to conventional litigants, *Bancec* still would supply the rule of decision for foreign sovereigns and their instrumentalities. Rule 69 does not apply when "a federal statute governs" the issue. Fed. R. Civ. P. 69(a)(1). The Venezuela Parties object that "*Bancec* is not a federal statute." Mot. 10. But *Bancec* "is a federal common-law outgrowth of [a] specialized statute" (the FSIA), 932 F.3d at 139, so Rule 69 cannot transform

20

*Bancec* from a disjunctive to a conjunctive test.  Even without that carve-out, *Bancec* would preempt contrary Delaware law:  Because the Constitution commits "relations with foreign nations" to the federal government, the "international nature of the controversy makes it inappropriate for state law to control."  *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981); *see Bancec*, 462 U.S. at 622 n.11.

c.    The Venezuela Parties' Delaware-law argument has further procedural defects.

Because this Court affirmed Crystallex's attachment, the mandate foreclosed the Venezuela Parties' renewed challenge to Crystallex's attachment.  The district court lacked "'jurisdiction to alter the mandate of this court on the basis of matters included *or includable* in defendants' prior appeal.'"  *Taylor v. Comm'r of Pa. Dep't of Corr.*, 150 F.4th 188, 191 n.4 (3d Cir. 2025) (emphasis added).

The district court also did not abuse its discretion in determining that the prior litigation of Crystallex's attachment collaterally estops the Venezuela Parties from relitigating Delaware-law challenges to other attachments of the Republic's creditors.  *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2023 WL 7182179, at *5 (D. Del. Nov. 1, 2023); *see*

*Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995) (abuse-of-discretion review for collateral estoppel). The Venezuela Parties counter (Mot. 11) that this Court did not consider whether Crystallex needed to satisfy Delaware's alter-ego standard *under Rule 69*. That argument is wrong as a matter of not only circuit precedent, *see supra*, at 17-18, but also issue preclusion, which prevents the Venezuela Parties from making a "new argument[]" in support of "a different determination" of "issue[s]" already decided. *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 578 n.22 (3d Cir. 2002).

### 2. The Venezuela Parties Are Unlikely To Establish That The District Court Abused Its Discretion Three Times In Rejecting Disqualification

The Venezuela Parties also are unlikely to succeed in arguing that Weil's and Evercore's client relationships disqualified the Special Master and his advisors. This Court reviews the district court's comprehensive, well-reasoned decision for abuse of discretion, *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990), a deferential standard the Venezuela Parties ignore.

To start, the district court correctly concluded that the disqualification motions were "procedurally defective because they are untimely and

because they are based on waived arguments." *Crystallex* Dkt. 2526 at 5. The Venezuela Parties contend (Mot. 19-20) that they gained no strategic advantage by holding back their disqualification argument. With a front-row seat to the Venezuela Parties' years-long tactics and seriatim disqualification motions, the district court did not clearly err in finding it "undeniable" that the Venezuela Parties "have every incentive to prevent" the court from "completing its evaluation of the Updated Final Recommendation." *Crystallex* Dkt. 2526 at 13.

The disqualification arguments also are meritless. The Venezuela Parties challenge *none* of the district court's factual findings for clear error. The district court had ample discretion to conclude that a reasonable observer with knowledge of all relevant facts would not question the impartiality of the Special Master or his advisors based on unrelated business with bidders or their affiliates. In this uniquely complex and challenging sale, "it [was] ultimately necessary that the Court have the assistance, through the Special Master, of expert advisors who will inevitably have precisely the types of entanglements with Sale Process participants and bidders that the [Venezuela Parties] assert are disqualifying." *Crystallex* Dkt. 2526 at 51. The district court also thoroughly refuted the

Venezuela Parties' self-serving narrative that the Special Master or his advisors skewed the bidding process toward Elliott. *Id.* at 33-37.

Nor have the Venezuela Parties shown a violation of 28 U.S.C. § 455(b)(4). The Special Master and his advisors have no financial interest in any party in the proceeding or in the subject matter in controversy (the PDVH Shares), and the mere "possibility of garnering future fees as a result of their work in [the] Sale Process" is "far too 'remote, contingent, and speculative' to give rise to a need to disqualify." *Crystallex* Dkt. 2526 at 42-44 (quoting *Hook v. McDade*, 89 F.3d 350, 356 (7th Cir. 1996)).

## B.     The District Court's Order Delaying The Sale's Closing Addresses The Venezuela Parties' Claimed Harm

A stay also is unwarranted because the Venezuela Parties have not shown that they are "*likely* to suffer irreparable harm in the absence of" relief. *Heartland Payment Sys., LLC v. Volrath*, 762 F. App'x 95, 99 (3d Cir. 2019). Importantly, the district court has *already* ordered that the sale cannot close until seven days after the sale has received all necessary regulatory approvals and is ready to close. Dkt. 10-2 at 161-62.

The Venezuela Parties hope (Mot. 21-23) "to avoid emergency stay litigation." But "litigation costs are not irreparable harm." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 84 F.3d 988, 992 (7th

Cir. 1996). To the extent they hope that "a stay of the district court's final sale order" (Mot. 1) would bar extra-judicial preparations for closing—such as seeking regulatory approvals—that is an *injunction*, not a stay. The Venezuela Parties have not come close to showing a need for such extraordinary (and prejudicial) relief.

Even if the sale were likely to close during this appeal, the Venezuela Parties would suffer no legally cognizable harm. The judgments against Venezuela exceed $20 billion, more than even the Venezuela Parties' fantasy $18.6 billion valuation of the PDVH Shares, so the only possible end of this judgment-enforcement proceeding is the transfer of corporate control over CITGO to a successful bidder. *Crystallex* Dkts. 1140-1, 2180 at 14. Transferring control to Amber (rather than someone else) is not irreparable harm to the Venezuela Parties.

## C.    The Balance Of Equities And Public Interest Support Denying The Motion

A stay would upend the status quo and cause Crystallex, the other judgment creditors, and Amber severe prejudice. A stay would encourage the Venezuela Parties to complicate these appeals and try to run out the clock in the hope that the sale unravels before September 19, 2026 (or, in

certain circumstances, March 18, 2027), the outside date required by Amber's stock purchase agreement. *Crystallex* Dkt. 2319-1 § 8.1(b). A decade of scorched-earth litigation shows that the Venezuela Parties will take every opportunity "to resist the sale as best [they can]." *Crystallex* Dkt. 2526 at 51.

The public also "has an interest in the enforcement of judgments," not continued delay. *State Farm Mut. Auto. Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, 376 F. App'x 182, 184 (3d Cir. 2010). This Court warned that "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." 932 F.3d at 149. Six years later, Venezuela has still avoided its obligations, as dozens of fully affirmed judgments remain unenforced.

The Venezuela Parties quote (Mot. 5, 22, 24) selective snippets of executive-branch statements to suggest foreign-policy concerns weigh against the sale. But because OFAC approval is needed for closing, foreign-policy considerations rest with the Executive in administering that approval. And the current guidance states that OFAC "intends to implement a favorable licensing policy . . . in connection with the execution of a sale as contemplated in the Sale Procedures Order." OFAC, *FAQ 1123*,

https://ofac.treasury.gov/faqs/1123.  The Venezuela Parties are likely to misuse any stay to contend that OFAC may not proceed, undermining both the Judiciary's interest in enforcing its judgments against a recalcitrant debtor and the Executive's orderly consideration of the sale.

## II.   No Stay Should Be Entered Without A Bond To Protect Crystallex And Other Judgment Creditors

Were any stay to be granted, the Court should clarify that its order prevents only the closing—*not* any pre-approval steps, which could not plausibly cause irreparable harm.  This Court also should "condition relief on a party's filing a bond or other security in the district court," Fed. R. App. P. 8(a)(2)(E); *see Gov't Guar. Fund of Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 297 (3d Cir. 1996), "to secure the appellee from loss resulting from the stay of execution," *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980).  Because an unsuccessful appeal's duration could threaten the sale's closing and thus the PDVH Shares' value, no stay should be granted unless the Venezuela Parties post a bond in the district court in the amount of $8.924 billion, the value of judgments that would be satisfied upon closing.  *Crystallex* Dkt. 2363 at 5 n.1.

## CONCLUSION

The Court should deny the motion for a stay pending appeal.

December 8, 2025                    Respectfully submitted,

                                   */s/ Miguel A. Estrada*

Robert L. Weigel                   Miguel A. Estrada
Rahim Moloo                          *Counsel of Record*
Jason W. Myatt                     Lucas C. Townsend
Zachary Kady                       Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP        GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue                    1700 M Street, N.W.
New York, NY 10166                 Washington, DC 20036
(212) 351-4000                     (202) 955-8500

Raymond J. DiCamillo               Patrick J. Fuster
Jeffrey L. Moyer                   GIBSON, DUNN & CRUTCHER LLP
Travis S. Hunter                   333 South Grand Avenue
RICHARDS, LAYTON & FINGER, P.A.    Los Angeles, CA 90071
1 Rodney Square 920 N. King St.    (213) 229-7000
Wilmington, DE 19801
(302) 651-7700

*Counsel for Plaintiff-Appellee Crystallex International Corporation*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this response is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

December 8, 2025

/s/ Miguel A. Estrada
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

# CERTIFICATE OF COMPLIANCE

1.   This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,197 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.   This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point New Century Schoolbook font.

3.   This response complies with this Court's Rule 31.1(c) because the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses.

December 8, 2025                    */s/ Miguel A. Estrada*
                                   Miguel A. Estrada
                                   GIBSON, DUNN & CRUTCHER LLP
                                   1700 M Street, N.W.
                                   Washington, D.C.  20036
                                   (202) 955-8500

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2025, I caused the foregoing response to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the Court's CM/ECF system.  I further certify that service was accomplished on all parties via the Court's CM/ECF system.

December 8, 2025

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500