**Nos. 25-3347, 25-3348, 25-3349, 25-3350, 25-3363, 25-3453 to 25-3494, 25-3563 & 25-3564**

# In the United States Court of Appeals for the Third Circuit

CRYSTALLEX INTERNATIONAL CORPORATION, ET AL.,

*Plaintiffs-Appellees,*

v.

BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,

*Defendants-Appellants.*

Appeal from the United States District Court for the District of Delaware, Nos. 17-mc-151, 19-mc-79, 19-mc-290, 19-mc-342, 20-mc-257, 21-mc-18, 21-mc-46, 21-mc-481, 22-mc-68, 22-mc-69, 22-mc-131, 22-mc-156, 22-mc-263, 22-mc-264, 22-mc-347, 22-mc-453, 22-mc-464, 23-mc-298, 23-mc-340, 23-mc-378, 23-mc-379, 23-mc-397 (Stark, J.)

## APPELLANT PETRÓLEOS DE VENEZUELA, S.A.'S MOTION FOR LEAVE TO SUPPLEMENT THE RECORD


Katherine B. Wellington
HOGAN LOVELLS CADWALADER US LLP
125 High Street, Suite 2010
Boston, MA 02110
(617) 371-1000
katherine.wellington@hlc.com

*Counsel for Appellant Petróleos de Venezuela, S.A.*

---

TIDEWATER INVESTMENT SRL, ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

OI EUROPEAN GROUP B.V.,
*Plaintiff-Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

PHILLIPS PETROLEUM COMPANY VENEZUELA LTD, ET AL.,
*Plaintiffs-Appellees,*
v.
PETROLEOS DE VENEZUELA S.A., ET AL.,
*Defendants-Appellants.*

---

NORTHROP GRUMMAN SHIP SYSTEMS INC.,
*Plaintiff-Appellee,*
v.
MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

CONTRARIAN CAPITAL MANAGEMENT LLC, ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

ACL1 INVESTMENTS LTD, ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

RUSORO MINING LTD,
*Plaintiff-Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

RED TREE INVESTMENTS LLC,
*Plaintiff-Appellee,*
v.
PETROLEOS DE VENEZUELA S.A., ET AL.,
*Defendants-Appellants*.

---

KOCH MINERALS SARL, ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

CONOCOPHILLIPS GULF OF PARIA B.V.,
*Plaintiff-Appellee,*
v.
CORPORACION VENEZOLANA DEL PETROLEO, ET AL.,
*Defendants-Appellants*.

---

XYQ US, LLC,
*Plaintiff-Appellee,*
v.
PETROLEOS DE VENEZUELA S.A., ET AL.,
*Defendants-Appellants*.

---

GOLD RESERVE INC.,
*Plaintiff-Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

CONOCOPHILLIPS PETROZUATA B.V., ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

VALORES MUNDIALES S.L., ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

RUDI LOVATI, ET AL.,
*Plaintiffs-Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants*.

---

GRAMERCY DISTRESSED OPPORTUNITY FUND LLC,
*Plaintiff-Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

SAINT-GOBAIN PERFORMANCE PLASTICS EUROPE,
*Plaintiff-Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,
*Defendants-Appellants.*

---

## INTRODUCTION

For years, the real Petróleos de Venezuela, S.A. ("PDVSA") authorities were unable to participate in litigation against them or defend their interests and assets. Since 2019, the so-called "*ad-hoc* PDVSA Board" purported to represent PDVSA, including in this litigation. The United States' recognition of President Delcy Rodríguez's government on March 5, 2026 leaves no doubt that the real PDVSA authorities can now appear in this litigation.

As the Republic of Venezuela explained in its motion for an abeyance, CITGO is a vastly more valuable asset than it was when Amber Energy purported to buy it. *See* ECF No. 278-1 at 4. That fact counsels in favor of this Court granting an abeyance while Venezuela seeks to restructure its sovereign debt. *See id.* It also impacts a key legal issue on appeal before this Court. PDVSA respectfully asks this Court for leave to supplement the appellate record to include publicly available information bearing on a core question in this appeal: Whether the sale price for the PDVH shares authorized by the District Court is so grossly inadequate that it requires setting aside the sale. *See* ECF No. 160, Venezuelan Parties' Opening Brief 67–69 ("Op. Br."). In particular,

PDVSA requests that this Court supplement the record with CITGO's second-quarter financial results, attached as Exhibit 1. Those financial results strongly support PDVSA's argument that the $5.9 billion sale price is so grossly inadequate that it "shocks the conscience." *See id.* (quoting *Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 419 (Del. 1994)).

The real-world facts are shocking: CITGO is projected to have approximately $5.7 billion in cash on hand at the end of 2026, with full-year earnings (EBITDA) of $5.8 billion. *See* Ex. 1 at 3. The District Court approved Amber Energy's purchase of CITGO for approximately $5.9 billion. JA0414–415. If the sale goes forward, Amber Energy will obtain CITGO—a going concern generating many billions of dollars annually—*for about the same amount of cash that the business will have on hand*. Even taking into account Amber Energy's payment to bondholders, the effective price for the PDVH shares is far less than CITGO's projected earnings for the year. Under any standard—and certainly under Delaware law—that outcome "shocks the conscience."

This Court's precedents support supplementation of the record in situations like this one, where evidence establishes beyond any doubt the proper resolution of a pending issue. *See, e.g.*, *Castle v. Cohen*, 840 F.2d

173, 180 n.12 (3d Cir. 1988); *Denicola v. G.C. Murphy Co.*, 562 F.2d 889, 894 n.8 (3d Cir. 1977). The Court will determine whether CITGO should be handed over to a U.S. hedge fund at a windfall price, or whether the District Court's order must be vacated. Given the stakes in this case—which impact the Venezuelan people and Venezuela's efforts to restructure its sovereign debt—this Court should take into account the real-world evidence plainly demonstrating the woefully inadequate sale price authorized by the District Court.

## BACKGROUND

On November 25, 2025, the District Court approved Special Master Pincus's recommendation to sell the shares of PDVH, a wholly owned subsidiary of PDVSA and the indirect parent of CITGO, for $5.9 billion. JA0258–425; JA0426–428. The District Court approved the final sale order on November 29, 2025. JA0429–462. At the sale hearing, the Venezuelan Parties' expert valued the PDVH shares at $18.6 billion. JA0352; Op. Br. 67–68. The Special Master's own advisor, Evercore, proposed a $13.2 billion valuation. JA0295–296, JA0372; Op. Br. 67–68.

The District Court did not accept either valuation, rejecting Evercore's calculation as "outdated" and purportedly "contain[ing]

errors." JA0372; Op. Br. 68. But the central "error[]" the District Court identified was CITGO's underperformance of its financial estimates in some prior years. *Id.* As PDVSA argued at the hearing, and continues to argue on appeal, the District Court erred by rejecting the valuations proposed by both the Venezuelan Parties and the Court's own advisor. *See id.* Despite the Venezuelan Parties' arguments to the contrary, the District Court concluded that the $5.9 billion sale price to Amber Energy did not "shock the judicial conscience." JA0360–365, JA0417, JA0440.

On August 13, 2026, following the close of briefing in this appeal, CITGO released its second-quarter 2026 financial results. Those results forecast full-year 2026 earnings (EBITDA) of approximately $5.8 billion and projected a year-end 2026 cash balance of approximately $5.7 billion. *See* Ex. 1 at 3.[1]

## LEGAL STANDARD

Supplementation of the record is appropriate, among other instances, where "the proffered addition would establish beyond any doubt the proper resolution of the pending issue" and "remanding the

[1] CITGO's six-month EBITDA as of its second-quarter filing was $1.75 billion, far above the District Court's assumptions. *Compare* Ex. 1 at 6, *with* JA0295–296 and JA0355 (criticizing CITGO's financial projections).

case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 226 (3d Cir. 2009); *see Phillips v. Archdiocese of Newark*, No. 20-2948, 2022 WL 2805152, at *1 (3d Cir. July 18, 2022).

## ARGUMENT

A key issue on appeal is whether vacatur of the District Court's sale order is warranted because Amber Energy's $5.9 billion purchase price is so grossly inadequate that it "shocks the conscience." *See Burge*, 648 A.2d at 419; Op. Br. 67–69. CITGO's recent earnings data "establish[es] beyond any doubt the proper resolution of [that] pending issue." *Acumed*, 561 F.3d at 226 (record supplementation appropriate where material dictates the "proper resolution of the pending issue"); *Castle*, 840 F.2d at 180 n.12 (granting motion to make letter part of appeal where letter was "material"); *see also Denicola*, 562 F.2d at 894 n.8 (adding document to appeal record where included in joint appendix but not filed with district court).

Under Delaware law, a "grossly inadequate" sale price must be set aside. *Burge*, 648 A.2d at 419. As PDVSA's briefing explains, the $5.9

billion "sale price is grossly inadequate because it is far less than 50% of the fair market value of the PDVH shares, and in all events it shocks the judicial conscience." Op. Br. 67. The District Court disagreed, rejecting both PDVSA's $18.6 billion valuation of the PDVH shares and the District Court's own advisor Evercore's $13.2 billion valuation. *See* JA0296–297; JA0352; JA0366–367; JA0371–372; JA0390–395. The primary justification the District Court gave for rejecting Evercore's valuation was that it believed CITGO's projected earnings were too high, and that CITGO would make far less money. JA0295–296 (calling CITGO's projections "overly optimistic").

As PDVSA explains in its briefs, the District Court's analysis was deeply flawed; it should not have assessed the value of the PDVH shares based on short-term earnings fluctuations. *See* Op. Br. 68. Even if this Court accepts this aspect of the District Court's flawed approach, however, the real-world evidence shows that the District Court grievously erred by discounting CITGO's projected earnings and then using those discounted earnings to value the PDVH shares. *See* JA0360–365; JA0371–372. In essence, the District Court made the call that

CITGO would make *less money* than it anticipated—by a lot—and that this justified approving Amber Energy's bargain-basement price. *See id.*

Not so. The real-world evidence that PDVSA seeks to include in this Court's record shows beyond peradventure that the District Court got it wrong. Very wrong. CITGO is projected to have $5.7 billion *in cash* at the end of the year. CITGO will thus *outperform its earnings estimates*, undermining the fundamental assumptions underlying the District Court's valuation and approval of the sale price. Indeed, this evidence directly rebuts Appellees' contention before this Court that CITGO's projections were "unduly optimistic," justifying the District Court's low-ball valuation of the PDVH shares and its approval of the $5.9 billion sale price to Amber Energy. ECF No. 189, Crystallex Response Brief 62.

This real-world evidence also demonstrates without a doubt that the sale price approved by the District Court shocks the conscience. If the sale were to close, Amber Energy would pay about the same amount for the PDVH shares as CITGO's cash on hand—and would obtain an asset worth many times that amount, which would continue to generate billions of dollars in annual revenue. Even taking into account Amber Energy's payment to bondholders, the effective price for the PDVH shares

is far less than CITGO's projected earnings for the year. That price is grossly inadequate under any standard. *See* Op. Br. 66–69; *Burge*, 648 A.2d at 419; *Girard Tr. Bank v. Castle Apartments*, 379 A.2d 1144, 1145–46 (Del. Super. Ct. 1977).

PDVSA agrees with the Republic that this Court should grant an abeyance. To the extent this case moves forward, however, PDVSA submits that the Court should take CITGO's recent earnings into account when deciding whether the sale price is so grossly inadequate that it must be set aside. Op. Br. 67–69 (explaining why sale price already shocked the conscience). Although this Court could "remand[] the case to the district court for consideration of" CITGO's 2026 financial data, *Acumed*, 561 F.3d at 226; *see also Phillips*, 2022 WL 2805152, at *1 (recognizing remand for fact-finding as alternative relief), PDVSA submits that the better course is to rule on the parties' appeal and vacate the District Court's order. *See Denicola*, 562 F.2d at 894 n.8 (considering material document without additional fact finding from district court). That would result in a remand to the District Court, where the court could take into account CITGO's earnings as part of any further proceedings.

There is simply no justification for permitting Amber Energy to obtain CITGO at a windfall price. The people of Venezuela are seeking to rebuild after a devastating earthquake, while Venezuela engages in the process of restructuring its sovereign debt. This Court should not ignore real-world evidence that the District Court got it wrong, and it should permit PDVSA to supplement the record with CITGO's latest earnings.

## CONCLUSION

For the foregoing reasons, PDVSA respectfully requests that the Court supplement the appellate record to include the accompanying exhibit.

October 7, 2026

Respectfully submitted,

*/s/ Katherine B. Wellington*
Katherine B. Wellington
HOGAN LOVELLS CADWALADER
US LLP
125 High Street, Suite 2010
Boston, MA 02110
(617) 371-1000
katherine.wellington@hlc.com

*Counsel for Appellant Petróleos de Venezuela, S.A.*

**CERTIFICATE OF COMPLIANCE**

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1,686 words, excluding the parts of the motion exempted by Rule 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type.

3. As required by L.A.R. 31.1(c), Microsoft Defender Antivirus Version 1.459.576.0 scanned this document and found no viruses.

/s/ *Katherine B. Wellington*
Katherine B. Wellington

## CERTIFICATE OF BAR MEMBERSHIP

This motion complies with Local Appellate Rule 28.3(d) because the attorney whose name appears on this motion, Katherine B. Wellington, is a member in good standing of the bar of this Court.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on October 7, 2026. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *Katherine B. Wellington*
Katherine B. Wellington