Nos. 25-3347, 25-3348, 25-3349, 25-3350, 25-3363, 25-3453 to 25-3494, 25-3563, 25-3564

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

CRYSTALLEX INTERNATIONAL CORPORATION,

*Plaintiff-Appellee*,

v.

BOLIVARIAN REPUBLIC OF VENEZUELA, ET AL.,

*Defendants-Appellants.*

---

Appeals From The United States District Court
For The District of Delaware
No. 1:17-mc-151-LPS, Judge Leonard P. Stark (sitting by designation)

---

**OPPOSITION TO VENEZUELA'S**
**MOTION TO HOLD APPEAL IN ABEYANCE**

---

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Miguel A. Estrada
*Counsel of Record*
Lucas C. Townsend
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
RICHARDS, LAYTON & FINGER, P.A.
1 Rodney Square 920 N. King St.
Wilmington, DE 19801
(302) 651-7700

Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Plaintiff-Appellee Crystallex International Corp.*

Christopher L. Carter
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8063

James D. Nelson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5411

Jody C. Barillare
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street
Suite 2201
Wilmington, DE 19801
(302) 574-7294

Edward H. Davis Jr.
Fernando J. Menendez
SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
(305) 372-8282

*Counsel for Appellee*
*OI European Group B.V.*

Steven F. Molo
Justin M. Ellis
Mark W. Kelley
Lauren F. Dayton
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170
smolo@mololamken.com
jellis@mololamken.com
mkelley@mololamken.com
ldayton@mololamken.com

*Counsel for Appellee*
*Red Tree Investments, LLC*

Joshua S. Bolian
Jared A. Hagler
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700
jbolian@rjfirm.com
jhagler@rjfirm.com

F. Troupe Mickler IV
ASHBY & GEDDES
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
tmickler@ashbygeddes.com

*Counsel for Appellees ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*

Alexander A. Yanos
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
(212) 210-9400

Robert Poole
ALSTON & BIRD LLP
1201 W. Peachtree St. NE
Suite 4900
Atlanta, GA 30309
(404) 881-4547

Laura Davis Jones
Peter J. Keane
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market St., 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

*Counsel for Appellee Northrop Grumman Ship Systems, Inc. (now known as Huntington Ingalls Incorporated)*

James E. Berger
Charlene C. Sun
Alice A. Gyamfi
DLA PIPER, LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4715
james.berger@us.dlapiper.com
charlene.sun@us.dlapiper.com
alice.gyamfi@us.dlapiper.com

R. Craig Martin
Caleb Johnson
DLA PIPER, LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
(302) 468-5655
craig.martin@us.dlapiper.com
caleb.johnson@us.dlapiper.com

*Counsel for Appellee Rusoro Mining Ltd.*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 8

I. The Court Should Reject Venezuela's Attempt to Avoid the Decisions Below .......... 8

II. Holding These Appeals in Abeyance Would Severely Prejudice Judgment Creditors .......... 12

III. Neither Foreign-Policy Concerns Nor International Comity Support Venezuela's Request .......... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Armstrong v. United States*,
364 U.S. 40 (1960) ... 11

*Coyne v. Schenley Indus., Inc.*,
155 A.2d 238 (Del. 1959) ... 11

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
760 F. App'x 1 (D.C. Cir. 2019) ... 3

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019) ... 3, 4, 13, 14

*Guaranty Tr. Co. v. United States*,
304 U.S. 126 (1938) ... 10

*Jesner v. Arab Bank, PLC*,
584 U.S. 241 (2018) ... 14

*OIEG B.V. v. Bolivarian Republic of Venezuela*,
73 F.4th 157 (3d Cir. 2023) ... 10

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
109 F.3d 850 (2d Cir. 1997) ... 15

## INTRODUCTION

Venezuela has employed the same tactic of seeking a stay of proceedings on the eve of oral argument under every government the United States has recognized in the past decade. The Maduro government employed it in the appeal of Crystallex's judgment in the District of Columbia, the National Assembly tried it in the appeal of the order granting Crystallex's writ of attachment *fieri facias* in Delaware, and now the Rodríguez government has reverted to it in these appeals. The Court should recognize Venezuela's motion as the latest installment in a consistent pattern of gamesmanship that has spanned every recognized government, and deny it.

Masquerading as a procedural motion, Venezuela's request is in essence a challenge to the district court's rejection of the Venezuela Parties' *merits* contention that they should be permitted to decide for themselves if, when, or how much of their creditors' judgments might be paid from some imagined alternative transaction involving the PDVH shares that should await some more opportune (and much later) time. Granting the motion would be a reversal in all but name of the district court's decision by potentially pushing the closing of the approved sale

past the outside dates and unraveling the related settlement of the 2020 Bondholders' lien, risking a relaunch of the sale process. It would be grossly inequitable to allow Venezuela to inflict such immense prejudice on judgment creditors after years of defying final and binding judgments.

Nor does foreign policy or international comity justify such a result. Venezuela does not speak for the United States—which will apply any foreign-policy considerations it deems relevant in its decision whether to license the sale—and international comity does not favor giving Venezuela another opportunity to avoid its obligations under long-final federal judgments. Any suggestion that the Rodríguez government deserves special consideration because it was only recently recognized ignores that recognition affects only which government can speak for Venezuela in our courts. It does not affect Venezuela's legal obligations, which under longstanding precedent remain unchanged regardless of any change in government or recognition status. Indeed, it is an especially cynical plea coming from a government that is the direct heir of the Chávez regime that committed the depredations the judgments seek to remedy, that has been continuously in power since, and that could have paid those judgments at any time before now to avoid the sale.

## BACKGROUND

In 2017, judgment was entered against Venezuela because it unlawfully expropriated Crystallex's mining rights. The D.C. Circuit affirmed. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 760 F. App'x 1 (D.C. Cir. 2019). Six days before oral argument in the D.C. Circuit, "Venezuela filed an emergency motion to hold th[e] case in abeyance," for which the D.C. Circuit sanctioned Venezuela because the motion was "misleading and meritless." *Id.* at 3. Venezuela refused to pay the judgment, so Crystallex attached in aid of execution the shares of PDVSA in PDVH, the ultimate parent of CITGO. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 134 (3d Cir. 2019).[1] The resulting lien "attach[ed] all shares of stock and any other assets or rights incident to that stock ownership." JA1820. PDVSA appealed and, a month before oral argument, Venezuela (now represented by the newly recognized National Assembly) unsuccessfully moved "to stay these appeals for 120 days so that it could further evaluate its legal position." *Crystallex*, 932 F.3d at 134. The Court affirmed the grant of Crystallex's

[1] Crystallex attached the shares in August 2018, when the United States recognized Nicolás Maduro as President of Venezuela, and Delcy Rodríguez served as his vice-President. JA1814-1818.

writ of attachment, stating "[a]ny outcome where Crystallex is not paid means that Venezuela has avoided its obligations." *Id.* at 149.[2]

On remand, the Venezuela Parties argued that "only PDVSA should be permitted to conduct the sales process," but the district court rejected that argument because "it would be inequitable" to permit PDVSA to dictate itself the terms on which a sale might be conducted or Crystallex paid. JA115. As the district court explained, "Venezuela, through PDVSA and otherwise, has had every opportunity to pay its legitimate, Court-recognized debt to Crystallex, including before, during, and after the arbitration, and throughout the extensive litigation in this Court, the Court of Appeals, and the Supreme Court." JA115. Venezuela even could have "pai[d] Crystallex what it owes and avoid[ed] the sales process altogether." JA115. "But, having made Crystallex undertake a decade's worth of extensive and expensive efforts to collect on its judgment," the district court determined that it was "not going to permit a highly-recalcitrant judgment debtor to conduct its own sales process over the objection of its repeatedly-victorious judgment creditor." JA115.

[2] The Court "did not rule on [Venezuela's] motion to stay but stated [it] would consider that motion at oral argument," at which "Venezuela chose to forgo further pursuit of a stay." *Crystallex*, 932 F.3d at 134-35.

Over the next five years, other creditors of Venezuela and PDVSA secured attachments junior to Crystallex's, and the district court implemented a sale process to generate proceeds to pay the attached judgments. Venezuela, meanwhile, engaged in relentless "efforts to prevent the Court from carrying out its judicial responsibilities" and "litigate[d] every conceivable challenge to th[e] Court's approach." JA4538.

Indeed, Venezuela has trotted out the hope of a "debt renegotiation process" repeatedly as a reason for delaying proceedings and decrying the sale process. Venezuela sought rehearing of this Court's 2019 decision affirming Crystallex's attachment by claiming that it would "impede[] efforts to formulate plans for consensual debt restructuring." No. 18-2797, Doc. 003113359593 at 16. Later, Venezuela pleaded with the United States—without success—to reverse its "decision to approve the sales process" because Venezuela "remains committed to resolving [its] debts through an orderly debt restructuring process." Ltr. from Dinorah Figuera, President of the National Assembly of Venezuela, to Antony Blinken, U.S. Secretary of State (May 16, 2023), *available at* https://tinyurl.com/5cpa2haz. In 2024, Venezuela moved to stay the sale process because "ongoing global developments give reason for hope that

a more productive process may soon be available." D. Ct. Dkt. 1273 at 1. Claiming victory in recent elections on behalf of opposition candidate Edmundo González Urrutia, Venezuela asserted that "his government intends to renegotiate Venezuela's debt, through the mechanisms commonly used by sovereign States to restructure their debt." *Id.* at 2. The district court denied Venezuela's request for a stay. D. Ct. Dkt. 1338.

After the district court approved the sale of the PDVH shares to Amber, JA264-265, Venezuela appealed and asked this Court to "order expedited briefing and argument of this appeal," with oral argument scheduled "[a]s promptly as the Court's schedule permits," Dkt. 87 at 1, 3. The Court ordered that "[t]hese appeals are EXPEDITED." Dkt. 111.

After the United States' recognition of Delcy Rodríguez as the President of Venezuela, Crystallex sought confirmation that the Venezuela Parties would appear at the then-scheduled argument without attempting the delay tactics employed in previous appeals. Dkt. 252. Crystallex's suspicions proved well-founded. Six days after Crystallex filed its motion, Venezuela's former counsel moved to withdraw, and its new counsel entered its appearance and immediately moved for a 60-day continuance of oral argument. Dkts. 254, 255, 257. The judgment

creditors and Amber opposed this request, explaining that "[t]here is no doubt that Venezuela is up to speed on the issues in this case" and that its request for a continuance was a "transparently pretextual" ploy to delay these proceedings. Dkt. 262 at 1-3; *see* Dkts. 263, 264, 265, 267, 268.

The Court granted Venezuela's motion to continue argument, Dkt. 270, but ordered Venezuela to "notify the court, with specificity what, if any, of previous counsel's briefing they adopt no later than July 27th," and directed it to submit any supplemental briefing by then, Dkt. 273. Venezuela filed a one-sentence status report stating that "it does not intend to depart from the substantive positions taken by the so-called *ad hoc* government" and did not submit supplemental briefing. Dkt. 274.

On September 29, 2026, counsel for Venezuela informed counsel for appellees that they were considering moving to expand argument time to 30 minutes per side and asked if appellees would join that motion. Two days later, Venezuela moved for entirely different and inconsistent relief, asking the Court to hold these appeals in abeyance indefinitely, purportedly to allow it to "formulate a plan for reorganization" that would restructure its debt, citing a ***May 2026*** announcement of its intent to initiate a comprehensive restructuring, with "updates on the debt-

restructuring process at six-month intervals." Dkt. 278-1 at 4, 10.

## ARGUMENT

### I. The Court Should Reject Venezuela's Attempt to Avoid the Decisions Below

The principal order on appeal is the district court's order that the PDVH shares be sold to Amber Energy to satisfy the secured judgments of creditors of the Venezuela Parties. JA264-265. Venezuela's motion seeks to short-circuit that review entirely under the guise of a scheduling procedural motion. But both the arguments offered in support and the obvious consequences of granting the motion show the ploy for what it is. Venezuela claims that "[a] forced sale of CITGO, Venezuela's most valuable foreign asset," would impede "Venezuela's economic recovery," and that the district court supposedly ordered CITGO to be sold "for a fraction of what it is worth." Mot. 12-13. Those arguments echo those Venezuela raised below and on appeal that the sale price is inadequate. They provide no basis to indefinitely stay these *expedited* appeals. *See* Dkt. 111. As shown below, the consequences for the judgment creditors could be catastrophic, since the relief requested—indefinite abeyance plus an assuredly forthcoming renewed request to stay the sale pending appeal—would push the closing past the applicable sale deadlines.

Venezuela contends that the Court should grant its extraordinary request for an open-ended stay because this is purportedly the first time in history that it can attempt to restructure its debts and that this Court should allow it to propose "[a]n orderly process" as an alternative to the sale process ordered and implemented by the district court. Mot. 1, 13. But Venezuela already made its "restructuring" argument when it sought rehearing in 2019, and when it sought to persuade the United States to block the sale process in 2023, and the district court rejected these exact arguments *on their merits*, holding that the Venezuela Parties "will not be running the process" and that "it would be inequitable" to permit them to do so because they had refused at "every opportunity to pay [their] legitimate, Court-recognized debt[s]." JA114-115. The district court also denied the Venezuela Parties' request to delay the sale process pending a potential restructuring of their debts. D. Ct. Dkt. 1338. Venezuela has not challenged these rulings on appeal, either originally or when this Court gave the Rodríguez government leave to submit a supplemental brief. The Court should not grant a form of relief that effectively reverses the district court based on a challenge to the sale process that Venezuela did not deign to include in any merits briefing.

Moreover, this is certainly not Venezuela's first opportunity to work out a way to pay its lawful creditors. The recognized government of Venezuela was under the control of President Rodríguez's Chavista-regime predecessors when it unlawfully expropriated the creditors' property then refused to pay "before, during, and after" extensive, years-long litigation even in the face of binding federal judgments and the attachment of its property. JA115. It would be both ironic and inequitable if this Court were to permit the same government that unlawfully expropriated creditors' assets and then refused to pay judgments against it for years to pin all the blame on the National Assembly in aid of yet another attempt to avoid its obligations. And, of course, under established principles any change in recognition does not affect Venezuela's obligations, which are "vested in the state rather than in any particular government which may purport to represent it." *Guaranty Tr. Co. v. United States*, 304 U.S. 126, 137 (1938); *OIEG B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 169 (3d Cir. 2023).

If that were not enough, Venezuela asks the Court to grant its motion because "CITGO is Venezuela's most valuable international asset and an engine for generating billions in dividends," and "Venezuela

*intends to use that money to fuel its economic recovery*." Mot. 11 (emphasis added). But the district court granted—and this Court affirmed—a writ of attachment to Crystallex that attaches and places a first priority lien upon PDVSA's shares in PDVH and all "assets or rights incident to that stock ownership," including the right to receive dividends, and ordered PDVH to "hold these items until another order of the Court releases you from this obligation." JA1820; *see Coyne v. Schenley Indus., Inc.*, 155 A.2d 238, 240 (Del. 1959) (right "to participate in dividends and profits" is among "the most material rights incident to stock ownership"). The Court should not grant an abeyance that Venezuela seeks for the openly avowed purpose of circumventing a writ of attachment issued by the district court and affirmed by this Court.

If, contrary to its prior claims, Venezuela now has a sincere, realistic plan to restructure its *unsecured* debts, it is free to pursue it. But Venezuela cannot use that restructuring to continue ignoring judgments or nullify creditors' attachments, which are "property interests" in "whatever proceeds [the PDVH shares] might bring" that cannot be taken without "just compensation … under the Fifth Amendment." *Armstrong v. United States*, 364 U.S. 40, 44-49 (1960).

Any legitimate restructuring efforts offer no reason to stay these appeals.

## II. Holding These Appeals in Abeyance Would Severely Prejudice Judgment Creditors

The Venezuela Parties' judgment creditors have waited a decade or more to be made whole through proceeds from the judicial sale of the PDVH shares. The sale process culminated in a sale agreement that is predicated on closing by March 2027. JA8694-8696. The sale agreement is, in turn, predicated on a transaction support agreement between Amber and the 2020 Bondholders that will automatically terminate if the sale does not close by April 2027. JA8258. Given that Venezuela can be counted on to renew its motion to stay the sale order pending appeal immediately should OFAC license the sale, Dkt. 111, Venezuela's requested six-month stay threatens to push the closing past one or both outside dates, risking termination of the sale agreement and a potential relaunch of the sale process, which is undoubtedly what Venezuela hopes to achieve. That would immensely prejudice the judgment creditors, who would be forced to wait additional years for compensation and at additional cost. And it might irreparably damage any future sale process by dissuading rational potential purchasers that might consider bidding by demonstrating that Venezuela will not only use every conceivable

scorched-earth tactic to fight off buyers, but also that such tactics pay off.

On the other side of the ledger, Venezuela contends that "the litigation is a costly and distracting process for a country working hard to revitalize its economy." Mot. 12. But these are *judgment enforcement proceedings*. The only reason there is "litigation" is that, after the creditors' claims were reduced to final judgments years ago, Venezuela has been thumbing its nose at those judgments. *See, e.g.*, JA115. Adding insult to injury, Venezuela contends that, after expropriating creditors' assets and refusing to honor judgments against it, it should not be subject to a "looting" that allows judgment creditors to "reap a windfall." Mot. 19. *Venezuela* engaged in the only "looting" in this case, time and again, for which the attached judgments provide long-delayed compensation.[3]

## III. Neither Foreign-Policy Concerns Nor International Comity Support Venezuela's Request

Venezuela cites improving relations with the United States and the

[3] Venezuela claims Crystallex is a "litigation company" (at 19), but Crystallex has been forced to litigate because the Rodríguez government's predecessors in the Chávez regime "seized [Crystallex's mining assets] without providing compensation." *Crystallex*, 932 F.3d at 133. The Canadian court overseeing Crystallex's insolvency has been waiting a decade for the enforcement of Crystallex's judgment so that its assets can be distributed to investors, whose interests also weigh heavily against a stay as a matter of equity.

easing of sanctions unrelated to the issues in this case to support its claim that an abeyance accords with U.S. foreign policy. Mot. 2-3, 6-9, 12. But it is not for Venezuela to say what is in the interest of U.S. foreign policy. As this Court has held, "[t]he Treasury sanctions provide an explicit mechanism to account for" "U.S. foreign policy interests," and OFAC will express the Executive's view in its decision whether to license the sale. *Crystallex*, 932 F.3d at 151. "The political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 265 (2018). The Court's role in this appeal is to review the sale order based on the issues preserved in the briefing, which has closed. Venezuela did not even attempt to raise these foreign-affairs arguments, despite the opportunity to submit supplemental briefing. Venezuela is free to make its foreign-policy arguments to the Executive in connection with the OFAC licensing process, but they provide no reason to further delay these appeals.

Nor does international comity favor a stay. As Venezuela's own authority states, "the United States has a strong interest in ensuring the enforceability of valid debts" and, while "the United States advocates negotiations to effect debt reduction and continued lending to defaulting

foreign sovereigns, it maintains that creditor participation in such negotiations should be on a strictly voluntary basis." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997). *Pravin* involved a "six-month stay" before judgment that "did not threaten the long-term enforceability of the debt," and the court held that "an indefinite stay to allow Peru to complete its efforts to renegotiate its foreign debt would prejudice United States interests." *Id.*

This case does not involve creditors voluntarily negotiating with a foreign state to restructure its debts before judgment. It involves a foreign state that has thumbed its nose at judgments of U.S. courts for years and has fought tooth and nail to avoid paying them. We are long past the time for negotiations or settlement. The Court should reject Venezuela's request for an "indefinite stay" that could "threaten the long-term enforceability of [its] debt[s]." *Pravin*, 109 F.3d at 855.[4]

## CONCLUSION

The Court should deny Venezuela's motion to stay these appeals.

---

[4] Venezuela contends that its requested stay would not be "indefinite," because it proposes to file status reports at six-month intervals, Mot. 17, but a stay with no clear defined end date does not become one of defined duration merely because it is punctuated with periodic status reports.

October 8, 2026

Respectfully submitted,

/s/ Miguel A. Estrada
Miguel A. Estrada
*Counsel of Record*
Lucas C. Townsend
Brian C. McCarty
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500

Robert L. Weigel
Rahim Moloo
Jason W. Myatt
Zachary Kady
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-4000

Patrick J. Fuster
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Raymond J. DiCamillo
Jeffrey L. Moyer
Travis S. Hunter
RICHARDS, LAYTON & FINGER, P.A.
1 Rodney Square 920 N. King St.
Wilmington, DE 19801
(302) 651-7700

*Counsel for Plaintiff-Appellee Crystallex International Corporation*

/s/ Christopher L. Carter (with permission)
Christopher L. Carter
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 951-8063

James D. Nelson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-5411

Jody C. Barillare
MORGAN, LEWIS & BOCKIUS LLP
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-7294

Edward H. Davis Jr.
Fernando J. Menendez
SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
(305) 372-8282

*Counsel for Appellee OI European Group B.V.*

*<u>/s/ Joshua S. Bolian (with permission)</u>*
Joshua S. Bolian
Jared A. Hagler
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, Tennessee 37203
(615) 320-3700

F. Troupe Mickler IV
ASHBY & GEDDES
500 Delaware Ave., 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Counsel for Appellees ACL1 Investments Ltd., ACL2 Investments Ltd., and LDO (Cayman) XVIII Ltd.*

*<u>/s/ James E. Berger (with permission)</u>*
James E. Berger
Charlene C. Sun
Alice A. Gyamfi
DLA PIPER, LLP (US)
1251 Avenue of the Americas
New York, NY 10020
(212) 335-4715

R. Craig Martin
Caleb Johnson
DLA PIPER, LLP (US)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
(302) 468-5655

*Counsel for Appellee Rusoro Mining Ltd.*

*<u>/s/ Steven F. Molo (with permission)</u>*
Steven F. Molo
Justin M. Ellis
Mark W. Kelley
Lauren F. Dayton
MOLOLAMKEN LLP
430 Park Avenue, 6th Floor
New York, NY 10022
(212) 607-8170

*Counsel for Appellee Red Tree Investments, LLC*

*<u>/s/ Alexander A. Yanos (with permission)</u>*
Alexander A. Yanos
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
(212) 210-9400

Robert Poole
ALSTON & BIRD LLP
1201 W. Peachtree St. NE,
Suite 4900
Atlanta, GA 30309
(404) 881-4547

Laura Davis Jones
Peter J. Keane
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market St., 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100

*Counsel for Appellee Northrop Grumman Ship Systems, Inc. (now known as Huntington Ingalls Incorporated)*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,112 words, excluding the parts of the brief exempted by Rule 32(f).

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point New Century Schoolbook font.

3. The electronic copy of this document has been scanned with version 7.29.20108.0 of CrowdStrike Falcon Sensor and is free of viruses.

October 8, 2026

*/s/ Miguel A. Estrada*

Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October 2026, the foregoing document was served on all parties or their counsel of record via the Court's CM/ECF system.

October 8, 2026

*/s/ Miguel A. Estrada*
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500