**Nos. 25-3347, 25-3348, 25-3349, 25-3350, 25-3363**

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

CRYSTALLEX INTERNATIONAL CORPORATION,
*Plaintiff-Appellee,*

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,
*Defendant-Appellant.*

Appeals from the United States District Court
for the District of Delaware, No. 1:17-mc-151-LPS
Before the Honorable Judge Leonard P. Stark (sitting by designation)

## OPPOSITION OF CONOCOPHILLIPS APPELLEES TO VENEZUELA'S MOTION TO HOLD APPEALS IN ABEYANCE

GARRETT B. MORITZ
KEVIN A. RUDOLPH
ROSS ARONSTAM & MORITZ LLP
1313 N. Market St., Suite 1001
Wilmington, DE 19801
(302) 576-1600

MARCUS J. GREEN
MICHAEL S. KIM
KOBRE & KIM LLP
800 Third Ave., 6th Floor
New York, NY 10022
(212) 488-1200

AMY R. WOLF
MICHAEL H. CASSEL
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
(212) 403-1000

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 4

ARGUMENT ........................................................................................ 7

I. Venezuela has not met the requirements for foreign comity abstention ........................................................................................ 7

II. Equitable considerations do not favor abeyance ................................ 11

CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abitron Austria GmbH* v. *Hetronic Int'l, Inc.*,
600 U.S. 412 (2023) .......... 4, 10

*Baker* v. *Carr*,
369 U.S. 186 (1962) .......... 8

*Borowski* v. *Kean Univ.*,
68 F.4th 844 (3d Cir. 2023) .......... 2

*Colorado River Water Conservation Dist.* v. *United States*,
424 U.S. 800 (1976) .......... 8

*ConocoPhillips Petrozuata BV* v. *Bolivarian Republic of Venezuela*,
2024 WL 4986937 (3d Cir. Dec. 5, 2024) .......... 4

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
2021 WL 129803 (D. Del. Jan. 14, 2021) .......... 5

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
2022 WL 611586 (D. Del. Mar. 2, 2022) .......... 5

*Czyzewski* v. *Jevic Holding Corp.*,
580 U.S. 451 (2017) .......... 11

*Gross* v. *German Found. Indus. Initiative*,
456 F.3d 363 (3d Cir. 2006) .......... 1, 7, 8

*Guaranty Tr. Co. of N.Y.* v. *United States*,
304 U.S. 126 (1938) .......... 12

*Hartford Fire Ins. Co.* v. *California*,
509 U.S. 764 (1993) .......... 7

*OIEG B.V.* v. *Bolivarian Republic of Venezuela*,
73 F.4th 157 (3d Cir. 2023) .......... 12

*Pravin Banker Assoc., Ltd.* v. *Banco Popular Del Peru*,
109 F.3d 850 (2d Cir. 1997) .......... 1, 8, 9

*Republic of Iraq* v. *ABB AG*,
768 F.3d 145 (2d Cir. 2014) ....................................................................3, 12

*Sprint Commc'ns, Inc.* v. *Jacobs*,
571 U.S. 69 (2013)...................................................................................2

*Ungaro-Benages* v. *Dresdner Bank AG*,
379 F.3d 1227 (11th Cir. 2004) ................................................................8

*Vertiv, Inc.* v. *Wayne Burt PTE, Ltd.*,
92 F.4th 169 (3d Cir. 2024) ...................................................................7, 10

**Other Authorities**

OFAC General License No. 58 (2026),
https://ofac.treasury.gov/media/935566/download?inline ...................................6

# INTRODUCTION

Venezuela moves to abate these fully briefed, expedited appeals in favor of a possibility that it may someday pursue a global restructuring of its debt. Venezuela has failed to establish any legally cognizable basis for this Court to decline to consider these appeals and its motion should be denied.

This Court has had several opportunities in the past to consider requests for abstention on the basis of international comity and has made clear that the circumstances in which it should be applied are strictly limited. As the Court observed in *Gross* v. *German Foundation Industrial Initiative*, 456 F.3d 363, 393 (3d Cir. 2006), "[a]bsent true conflicts, a judgment from a foreign court, or parallel proceedings in a foreign forum, rarely have United States courts abstained from deciding the merits of a case on international comity grounds."

Venezuela does not assert the existence of a conflict of laws, a foreign judgment, or the pendency of an ongoing restructuring proceeding. Instead, it contends that it might commence a global restructuring process, at some unspecified later time, and that it will be "a process which ha[s] no obvious (and reasonably proximate) termination date." *Pravin Banker Assoc., Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997). The mere possibility of a global restructuring process does not justify displacing the fundamental principle that "'a federal court's obligation to hear and decide a case' within its jurisdiction 'is

virtually unflagging,' and a court has 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'" *Borowski* v. *Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023) (quoting *Sprint Commc'ns, Inc.* v. *Jacobs*, 571 U.S. 69, 77 (2013)).

Venezuela's effort to cast its motion as vindicating the purported foreign policy interests of the United States is also unpersuasive. Pending before this Court are challenges to the district court's approval of a sale of the PDVH shares in an effort to satisfy some $20 billion in final judgments. Venezuela has offered no reason why this Court should refrain from performing its normal role here as the arbiter of the correctness of the rulings of the lower courts. If the district court's decision is affirmed, the closing of the sale will still be subject to OFAC approval, and it is in that context that issues of foreign policy may appropriately be considered.

On the other side, abating these appeals would be manifestly prejudicial to creditors with substantial unsatisfied judgments, some of whom, like ConocoPhillips, have been waiting nearly two decades for justice.[1] ConocoPhillips is Venezuela's largest non-sovereign creditor. It is a major U.S. oil company which invested billions of dollars and years of work to develop Venezuela's oil reserves, only to have its assets unlawfully seized by the Chávez administration in 2007.

[1] The ConocoPhillips Appellees are ConocoPhillips Petrozuata B.V., ConocoPhillips Hamaca B.V., Phillips Petroleum Company Venezuela Limited, and ConocoPhillips Gulf of Paria B.V.

ConocoPhillips has been seeking compensation for that illegal seizure of its assets for the **past 18 years.** For Venezuela to tell this Court that it can disregard the interests of ConocoPhillips because it is just another "international investor" which "made investments with eyes wide open and then litigated against the illegal National Assembly of 2015 to reap a windfall" (Mot.[2] at 19), could not be more outrageous.

This Court has already given deference to the "new" recognized government of Venezuela by granting a postponement of oral argument and an opportunity to reconsider its positions, even though the "law has long recognized that the legal position of a foreign state survives changes in its government." *Republic of Iraq* v. *ABB AG*, 768 F.3d 145, 163–64 (2d Cir. 2014). Despite having been granted that delay, Venezuela fully adopted the prior positions taken by the Republic and PDVSA, and its motion points to no other intervening development beyond its May 2026 announcement of a potential restructuring, which predated its last motion to delay oral argument. Four months after the announcement, there is no indication that the restructuring has advanced in any meaningful way. By asking the Court to abstain in favor of that inchoate restructuring process, Venezuela's motion seeks to impose on this Court the responsibility for deciding that this litigation is contrary to U.S. foreign policy, which even if it were otherwise relevant to these appeals, would

[2] Citations to "Mot." refer to the motion to abate these appeals filed at Dkt. 278.

"risk[] the Judiciary [being] thrust into the unappetizing task of 'navigating foreign policy disputes belonging to the political branches.'" *Abitron Austria GmbH* v. *Hetronic Int'l, Inc.*, 600 U.S. 412, 427 (2023) (citation modified). The motion should be denied.

## BACKGROUND

Crystallex's opposition sets forth much of the background. ConocoPhillips highlights only the key points particularly relevant to this response.

From the early 1990s to 2007, ConocoPhillips participated in the extraction and upgrading of crude oil from three oil fields in Venezuela. In 2007, Venezuela expropriated ConocoPhillips' interests in those projects unlawfully and without compensation. ConocoPhillips commenced multiple international arbitrations seeking to recover its losses, ultimately leading to three relevant judgments: two against PDVSA (for approximately $2 billion and $48 million, respectively), and one against Venezuela (for approximately $8.5 billion plus interest). *See generally ConocoPhillips Petrozuata BV* v. *Bolivarian Republic of Venezuela*, 2024 WL 4986937, at *1–2 (3d Cir. Dec. 5, 2024), *aff'g*, 2023 WL 8803522 (D. Del. Dec. 20, 2023); JA0288. The two judgments against PDVSA are expected to receive a recovery through the sale transaction, but the proceeds of the sale will be insufficient to provide any recovery on the third judgment, which currently stands at approximately $11.5 billion. *See* JA0337.

ConocoPhillips served as a "Sale Process Party" in the district court, taking on a special role in helping to design the sale process and ensuring its fairness to all parties while maximizing value. *See* JA0277.

Throughout those proceedings, the district court repeatedly heard and rejected arguments by Venezuela that U.S. foreign policy considerations, or OFAC sanctions regulations, warranted delaying the sale process, in decisions that either were not appealed or from which appeals were dismissed. *See, e.g.*, *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2022 WL 611586, at *6–18 (D. Del. Mar. 2, 2022), *interlocutory appeal certified*, 2022 WL 1404702 (D. Del. May 4, 2022), *leave to appeal denied*, No. 22-8024 (3d Cir. July 26, 2022); *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2021 WL 129803, at *8–11, *12–15 (D. Del. Jan. 14, 2021); *appeal dismissed*, 24 F.4th 242 (3d Cir. 2022). As the district court held, although "the political branches have constitutional authority to stop courts from attaching, or disposing of attached, foreign-owned property in the United States," the Executive Branch had not "stopped this Court from undertaking the sale process (short of executing the sale)," and that, "[g]iven the significant separation-of-powers implications of curbing the judiciary's ability to enforce its judgments, the President would at least need to speak clearly before his executive orders could have the effect of stopping this Court's sale process." *Crystallex*, 2022 WL 611586, at *17 (citation modified). Venezuela appealed none of those rulings, either

originally or when its current recognized government appeared and was given leave to file a supplemental brief.

The potential debt restructuring upon which Venezuela predicates its request for an abeyance of this appeal is just that—*potential.* Restructuring has not progressed since Venezuela's public announcement in May 2026 that it might undertake a debt restructuring and OFAC's issuance of General License 58, permitting "all transactions prohibited by the Venezuela Sanctions Regulations … that are ordinarily incident and necessary *to the provision of legal, financial advisory, and consulting services* to the Government of Venezuela" and its instrumentalities "in connection with potential restructuring of debt."[3] Indeed, that same license expressly ***declined to*** authorize "[t]he restructuring, transfer, or settlement of debt of the Government of Venezuela, including debt of PdVSA and PdVSA Entities, or direct negotiations between the Government of Venezuela, including PdVSA and PdVSA Entities, and creditors regarding such restructuring, transfer, or settlement." OFAC Gen. License No. 58. In any event, Venezuela never explains how resolution of these appeals would impede a restructuring even if one were to begin tomorrow. Venezuela remains free to propose an alternative transaction before any sale is consummated. JA0461. Moreover, any closing

[3] OFAC Gen. License No. 58 (2026), https://ofac.treasury.gov/media/935566/download?inline (emphasis added).

remains subject to the separate approval requirements administered by OFAC. As a result, deciding these appeals neither compels a sale nor forecloses restructuring options. It simply resolves legal questions that have been fully litigated and are ripe for decision.

## ARGUMENT

### I. Venezuela has not met the requirements for foreign comity abstention.

Venezuela seeks to abate these appeals in favor of a potential sovereign debt restructuring process. Declining to hear a case on foreign comity grounds is "a type of abstention" in which "a court asks if it should decline to exercise jurisdiction over matters more appropriately adjudged elsewhere." *Vertiv, Inc.* v. *Wayne Burt PTE, Ltd.*, 92 F.4th 169, 176, 178 (3d Cir. 2024) (internal quotation marks omitted). But as a starting point, there must be some other proceeding to abstain in favor of. "The Supreme Court has emphasized, if there is no foreign judgment or ongoing proceeding in a foreign tribunal, application of international comity principles requires the presence of a 'true conflict'[4] between United States law and foreign law." *Gross* v. *German Found. Indus. Initiative*, 456 F.3d 363, 393 (3d Cir. 2006) (citing *Hartford Fire Ins. Co.* v. *California*, 509 U.S. 764, 798-99 (1993)). The mere

[4] A "true conflict" is a situation where "foreign law either requires a foreign entity to act in some fashion prohibited by the law of the United States, or makes compliance with the laws of both countries … impossible." *Gross*, 456 F.3d at 393 (citation modified).

possibility of a debt renegotiation starting at a later date is not a basis for abstention under the law of this Circuit.

In support of its argument that the Court can stay judicial proceedings in favor of a sovereign debt restructuring, Venezuela principally relies on two court of appeals cases, *Ungaro-Benages* v. *Dresdner Bank AG*, 379 F.3d 1227, 1239 (11th Cir. 2004), and *Pravin Banker Assocs., Ltd.* v. *Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997). *See* Mot. at 15. Neither is helpful to Venezuela's position.

In *Ungaro-Benages*, the Eleventh Circuit ruled that a U.S. plaintiff was required to pursue her claims in a tribunal that was established by international agreement, to which the U.S. was party, for the resolution of certain Nazi-era claims. 379 F.3d at 1229, 1235. In addition to bearing no resemblance to the situation here, the decision in *Ungaro-Benages* was repudiated by this Court in *Gross*, which held that "[w]e remain skeptical of [*Ungaro-Benages*'] broad application of the international comity doctrine, noting our 'virtually unflagging obligation' to exercise the jurisdiction granted to us … which is not diminished simply because foreign relations might be involved." 456 F.3d at 394 (quoting *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 817 (1976) and citing *Baker* v. *Carr*, 369 U.S. 186, 211 (1962)).

The Second Circuit's decision in *Pravin* also does not support Venezuela's motion. In *Pravin*, the Second Circuit affirmed the district court's grant of "a six-

month stay to allow the completion of the on-going liquidation proceedings," which it found to be consistent with "the federal courts' long-standing recognition of foreign bankruptcy proceedings." 109 F.3d at 855. But it also affirmed the district court's *denial* of a stay comparable to that sought here—a stay which would have converted a voluntary debt negotiation "into the equivalent of a judicially-enforced bankruptcy proceeding, for it would, in effect, have prohibited the exercise of legal rights outside of the negotiations." *Id.*

Venezuela therefore attempts to distinguish its own authority, arguing that *Pravin* addressed a foreign government's request for an indefinite abeyance, while Venezuela seeks an indefinite abeyance subject to status reports every six months. That is a distinction without a difference. In practical effect, a requirement of six-month status reports does not make the request for abeyance time-limited.

Venezuela also relies on General License 58, which permits access to blocked funds to pay restructuring advisors, as authority for the requested stay. But that license only highlights the weakness of Venezuela's motion. General License 58 solely allows for the use of blocked funds to pay advisors, but by its terms expressly *declines* to authorize Venezuela to undertake any actual debt restructuring process. Nor do the various non-specific press reports that Venezuela invokes meaningfully support its request for an abeyance. The upshot is that attempting to resolve the

intensely factual question of whether Venezuela is making "inadequate progress"[5]—whatever that entails—on its debt restructuring, as Venezuela requests this Court attempt every six months, "risks the Judiciary [being] thrust into the unappetizing task of navigating foreign policy disputes belonging to the political branches." *Abitron Austria GmBH* v. *Hetronic Int'l, Inc.*, 600 U.S. 412, 427 (2023) (citation modified).

Finally, even if a restructuring were legally a basis for delaying any of the issues in this appeal and actually underway, it is far from clear that abstention would be warranted. Among other things, abstention in favor of a foreign restructuring is only warranted where "the foreign bankruptcy proceeding is ongoing in a duly authorized tribunal while the civil action is pending before the United States court," and "the outcome of the United States civil action may affect the debtor's estate." *Vertiv*, 92 F.4th at 179–80. As noted, no foreign bankruptcy proceeding to which this Court could defer even exists. And even if it did, there must be a finding that the foreign proceeding, among other things, "provides for 'equality of distribution *among creditors of equal priority*'" in a manner similar to a U.S. restructuring. *Id.* (emphasis added) (citation omitted). Based on Venezuela's arguments in its motion, it appears that it would seek to effectuate a restructuring that would not respect the rights of the creditors in these proceedings, *secured* creditors with perfected liens by

[5] Mot. at 19.

virtue of having served writs of attachment on the shares of PDVH. There is no more foundational rule in U.S. restructuring proceedings than the "absolute priority rule," under which "[s]ecured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts." *Czyzewski* v. *Jevic Holding Corp.*, 580 U.S. 451, 457, 462 (2017). As the liens attached to the PDVH shares collectively secure over *$20 billion* in judgments, they exceed even the most optimistic projections for the value of CITGO. *See* JA0285–JA0288. There is thus no reasonable prospect that Venezuela has any residual economic interest in PDVH. Any restructuring that would attempt to divert value from the shares of PDVH away from the secured creditors to itself, as Venezuela appears to contemplate, would violate the absolute priority rule and therefore not satisfy the requirements of international comity. *See* Mot. at 11.

In the final analysis, this Court is simply not the venue to litigate what is or is not in the foreign policy interest of the United States. If this Court affirms the Sale Order, as it should, OFAC must still approve the transaction, and it is in the OFAC process that any foreign policy issues will appropriately be considered. This Court should simply decide the appeals as presented.

## II. Equitable considerations do not favor abeyance.

Although the above is more than sufficient to deny the motion, equitable considerations also weigh in favor of deciding these appeals without further delay.

*First*, the motion is dilatory. In June and July, the Court granted Venezuela's motion to postpone oral argument and permitted Venezuela to file supplemental briefing. *See* Dkts. 270, 273. The new government of Venezuela chose to adhere to the legal positions filed by the previous government, which had been well-represented throughout these proceedings (including by a former Solicitor General of the United States), and did not raise any matters regarding the proposed debt restructuring, even though Venezuela's announcement was made in May. *See* Dkt. 274. The grounds for this motion were plainly available at or before the time this Court provided for Venezuela's supplemental submission.

*Second*, the change in government is legally irrelevant. Venezuela makes much of the fact that the United States has changed its recognition of the government of that country. But in the courts of the United States, there is only one Venezuela, and its legal position does not change merely because the recognized government has. The "law has long recognized that the legal position of a foreign state survives changes in its government." *Republic of Iraq* v. *ABB AG*, 768 F.3d 145, 163–64 (2d Cir. 2014); *accord OIEG B.V.* v. *Bolivarian Republic of Venezuela*, 73 F.4th 157, 169 (3d Cir. 2023); *Guaranty Tr. Co. of N.Y.* v. *United States*, 304 U.S. 126, 137 (1938). Although this Court has extended a measure of grace to the new government and its new counsel, Venezuela's recent arguments that rely on disavowing the acts of the previous government have no

legal weight. The fact that a new government has been recognized does not alter Venezuela's obligations (which have been litigated extensively in the courts of the United States, including this Court), invalidate legal positions Venezuela has taken, or mandate that these proceedings be postponed or begin anew.

*Finally*, these appeals are ready for submission. The Court has already ordered that the appeals be expedited and has devoted substantial resources to preparing them for decision. The parties are likewise actively in the midst of preparation for oral argument. Further delay will simply prejudice the parties and prolong the uncertainty caused by these appeals.

**CONCLUSION**

Venezuela's motion to abate these appeals should be denied.

Respectfully submitted,

*/s/ Amy R. Wolf*

AMY R. WOLF
MICHAEL H. CASSEL
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
(212) 403-1000

MARCUS J. GREEN
MICHAEL S. KIM
KOBRE & KIM LLP
800 Third Ave.
6th Floor
New York, NY 10022
(212) 488-1200

*/s/ Garrett B. Moritz*
GARRETT B. MORITZ
KEVIN A. RUDOLPH
ROSS ARONSTAM & MORITZ LLP
1313 N. Market St.
Suite 1001
Wilmington, DE 19801
(302) 576-1600

*Counsel for the ConocoPhillips Appellees*

# CERTIFICATION OF BAR MEMBERSHIP (LAR 46.1)

Pursuant to Third Circuit Local Appellate Rule 46.1, I, Garrett B. Moritz , hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

*/s/ Garrett B. Moritz*
GARRETT B. MORITZ

October 8, 2026

## CERTIFICATE OF COMPLIANCE

1. This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2), as modified by this Court's October 5 order, because it does not exceed 15 pages in length.

2. This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

3. This response complies with this Court's Rule 31.1(c) because the text of the electronic brief and paper copies is identical to the text in the paper document, and the document has been scanned with CrowdStrike and free of viruses.

*/s/ Garrett B. Moritz*
GARRETT B. MORITZ

October 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Garrett B. Moritz*
GARRETT B. MORITZ

October 8, 2026